UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾x

ARCH SPECIALTY INSURANCE COMPANY,

        Plaintiff,

    -v-                                    No. 15 CV 10069-LTS

FARM FAMILY CASUALTY INSURANCE
COMPANY,

        Defendant.
‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾x

MEMORANDUM OPINION AND ORDER

On December 28, 2015, Plaintiff Arch Specialty Insurance Company ("Plaintiff" or "Arch") brought this action, seeking a judgment declaring that: (1) Mega Contracting Group, LLC ("Mega"), East 138th Street Owners LLC ("East 138th Street"), and Barrier Free Living Housing Development Fund Corporation ("Barrier Free Living") (collectively, the "Tendering Parties") qualify as additional insureds on a general liability insurance policy issued by Defendant Farm Family Casualty Insurance Company ("Defendant" or "Farm Family") to Mastercraft Masonry I, Inc. ("Mastercraft"), with respect to an underlying personal injury action pending in New York State Supreme Court, Joseph A. Giampa v. Barrier Free Living Housing Development Fund Corp. et al., Index No. 22943/2015E (the "Underlying Action"); (2) Farm Family has an obligation to defend and indemnify the Tendering Parties in the Underlying Action; and (3) Farm Family must reimburse Arch for the defense costs that it has incurred in the Underlying Action. (See docket entry no. 5.) Plaintiff also seeks a monetary judgment in the amount of $29,744.02 for attorneys' fees and defense costs incurred in the Underlying Action. (Id.) Plaintiff later filed an amended complaint on April 13, 2016, seeking the same relief. (See docket entry no. 15.) The Court has jurisdiction of this action pursuant to 28 U.S.C. § 1332.

On July 20, 2016, Plaintiff moved for summary judgment against Farm Family on all three of its causes of action, pursuant to Fed. R. Civ. P. 56, and to stay all discovery and relevant deadlines set forth in the Court's March 11, 2016, Pre-Trial Scheduling Order, pursuant to Fed. R. Civ. P. 26.  (See docket entry no. 17.)

The Court has reviewed thoroughly all of the parties' submissions.  For the reasons stated below, Plaintiff's motion for summary judgment is granted, Plaintiff's motion to stay proceedings is denied as moot, and the case is referred to Magistrate Judge Gorenstein for an inquest as to the defense cost reimbursement to which Arch is entitled.

BACKGROUND

The following summary of relevant facts is drawn primarily from Plaintiff's Statement of Undisputed Material Facts ("PSUF") (Docket entry no. 21) and affidavits submitted in connection with the instant motion.  References to the PSUF are inclusive of the evidence cited therein.  Except as indicated otherwise, the facts summarized below are undisputed.

The Mastercraft Contract

On or about May 31, 2013, Mastercraft entered into a contract (the "Mastercraft Contract") with Mega, a general contractor, pursuant to which Mastercraft agreed to serve as the masonry subcontractor at a construction site located at 616 East 139th Street, Bronx, New York (the "Project Site").  (PSUF ¶ 1; see also Vinciguerra Decl., Ex. 3, Docket entry no. 19-3.)  East 138th Street and Barrier Free Living owned the Project Site.  (PSUF ¶ 2.)

Pursuant to Paragraph 34 of the Mastercraft Contract, "Liability for Damage & Personal Injury":

> The Subcontractor [Mastercraft] hereby assumes entire responsibility and liability for any and all damages or injury of any kind or nature whatever (including death resulting

> therefrom) to all persons, whether employees of the Subcontractor or otherwise, and to all property caused by, resulting from, arising out of, or occurring in connection with the execution of the Work [defined as all masonry work as per the attached Scope of Work: Masonry dated 5/31/13 and all work to be done according to the drawing and specifications listed on the attached Exhibit A and Exhibit B, except for any changes agreed upon between General Contractor and Subcontractor during bid review and buyout].  Except to the extent, if any, expressly prohibited by statute, should any claims for such damage or injury (including death resulting therefrom) be made or asserted, whether or not such claims are based upon [Mega's] alleged active or passive negligence or participation in the wrong or upon any alleged breach of any statutory duty or obligation on the part of [Mega], the Subcontractor agrees to indemnify and save harmless [Mega], its members, officers, agents, servants and employees, the Owner [East 138th Street and Barrier Free Living], the Funding Agency and all other persons or entities required to be indemnified under the provisions of the General Contract (hereinafter collectively referred to as "the Indemnitees") from and against any and all such claims, and further from and against any and all loss, cost, expense, liability, damage or injury, including legal fees and disbursements, that the Indemnitees may directly or indirectly sustain, suffer or incur as a result thereof and the Subcontractor agrees to and does hereby assume, on behalf of the Indemnitees, the defense of any action at law or in equity which may be brought against the Indemnitees upon or by reason of such claims and to pay on behalf of the Indemnitees, upon demand, the amount of any judgment that may be entered against the Indemnitees in any such action.  In the event that any such claims, loss, cost, expense, liability, damage or injury arise or are made, asserted or threatened against  the Indemnitees, [Mega] shall have the right to withhold from any payments due or to  become due to the Subcontractor an amount sufficient in the judgment of [Mega] to protect and indemnify the Indemnitees from and against any and all such claim, loss, cost, expense, liability, damage or injury, including legal fees and disbursements, or [Mega] in its discretion, may require the Subcontractor, to furnish a surety bond or letter of credit satisfactory to [Mega] guaranteeing such protection, which bond of letter of credit shall be furnished by the Subcontractor within five (5) days after written demand has been made therefor.

(Vinciguerra Decl., Ex. 3 at 1, 17.)

Paragraph 35 of the Mastercraft Contract required Mastercraft "to procure and maintain, at its own expense, until completion and final acceptance of the work . . . [insurance for] Comprehensive General Liability, including contingent, contractual products, and completed operations . . . with a minimum limit of $1,000,000.00 combined single limit for bodily injury and property damage, and $2,000,000.00 Annual Aggregate," along with additional umbrella insurance coverage.  (Id. at 18.)

Paragraph 35(D) of the Mastercraft Contract provided that Mega "and the other Indemnitees *shall be named as additional insureds on a primary basis* to [Mastercraft's] Comprehensive General Liability using appropriate ISO forms that include Premises Operations Liability, Contractual Liability, Advertising and Personal Injury Liability and Products/Completed Operations Liability, or by using a company specific endorsement that provide equivalent protection." (Id. at 19 (emphasis added).)

The Insurance Policies

Arch issued "Commercial General Liability Policy Number GAP0009932-08" to Mega for the policy period September 27, 2013 to September 27, 2014 (the "Arch Policy"). (Vinciguerra Decl., Ex. 2, Docket entry no. 19-2.) Pursuant to the Arch Policy, Arch provided "commercial general liability coverage" to Mega with a $1,000,000 per-occurrence limit and $2,000,000 aggregate limit. (Id. at 2.)

Farm Family issued a general liability insurance policy to Mastercraft for the policy period October 22, 2013 to October 22, 2014, with a $2,000,000 per-occurrence limit and $4,000,000 aggregate limit (the "Farm Family Policy"). (Vinciguerra Decl., Ex. 4, Docket entry no. 19-4.) The Farm Family Policy specifically identifies Barrier Free Living, East 138th Street, and Mega as "additional insureds" in the "Additional Insured Schedule." (Id. at 7, 8.) In endorsements to the Farm Family Policy, Barrier Free Living is designated as an "Additional Insured – Designated Person or Organization," and East 138th Street and Mega are both designated as "Additional Insured[s] – Owners, Lessees or Contractors – Scheduled Person or Organization." (Id. at 16, 21, 22.) These endorsements provide that Barrier Free Living, East 138th Street, and Mega are additional insureds under the Farm Family Policy "with respect to liability for 'bodily injury', 'property damage' or 'personal and advertising injury' caused, in

whole or in part, by [Mastercraft's] acts or omissions or the acts or omissions of those acting on [Mastercraft's] behalf in the performance of [its] ongoing operations." (Id.)

The Farm Family Policy includes a "Primary and Noncontributory Insurance Condition," which provides that:

1. Where required by written contract or agreement executed by the parties to that contract or agreement, *this insurance is primary and/or noncontributory with respect to any other insurance policy issued to the additional insured*, and *such other insurance policy issued to the additional insured as a named insured shall be excess and/or noncontributing*, whichever applies, with this insurance; and

2. Any insurance provided by this insurance shall be primary to other valid and collectible insurance available to the additional insured except:

    a. As otherwise provided in the COMMON POLICY CONDITIONS, H. OTHER INSURANCE; or

    b. For any other valid and collectible insurance available to the additional insured as an additional insured by attachment of an endorsement to another insurance policy. In such case, the coverage provided under this insurance shall also be excess.

(Vinciguerra Decl., Ex. 6 at 6 (emphasis added).)

The Underlying Action

Joseph A. Giampa ("Giampa") was an employee of Mastercraft. (PSUF ¶ 16.) On or about May 28, 2015, Giampa commenced the Underlying Action, Joseph A. Giampa v. Barrier Free Living Housing Development Fund Corp. et al., Index No. 22943/2015E, a personal injury action against the Tendering Parties, in New York State Supreme Court. (Vinciguerra Decl., Ex. 1, Docket entry no. 19-1.)

In his complaint, Giampa alleges that, "at all times hereinafter mentioned, [he] was an employee of [Mastercraft]." (Id. at 16.) Giampa further alleges that, while "lawfully traversing the interior stairway at the [Project Site] on January 13, 2014, [he] was caused to be injured and suffered permanent and severe personal injuries without any fault on [his] part contributing

thereto." (Id. at 17.) Giampa's complaint asserts causes of action for negligence, violations of New York Labor Law §§ 200 and 241, and violations of Rule 23 of the Industrial Code of the State of New York. (See id. at 16-19.)

Farm Family, citing a "Workers' Compensation Board C2 Employer's Report of Work-Related Injury/Illness" form that is not annexed to Giampa's complaint or referred to in Giampa's complaint, asserts in its opposition to Arch's motion that Giampa was not on duty at the time of his accident. The Workers' Compensation document notes that, "While [Giampa] was walking to the side yard [at the Project Site at 6:45 AM on January 13, 2014], he slipped on [a] temporary step injuring his ankle." (Gorton Decl., Ex. A at 2, Docket entry no. 25.) According to the document, Giampa's shift on January 13, 2014 began at "7:00 AM." (Id.)

Mastercraft was impleaded into the Underlying Action as a third-party defendant by the Tendering Parties, who asserted causes of action for indemnification and breach of contract to procure insurance (the "Third-Party Action"). (Vinciguerra Decl., Ex. 12, Docket entry no. 19-12.)

Arch's Tenders to Farm Family

By correspondence dated January 24, 2014, Arch provided Farm Family a "Notice of Claim and Demand for Indemnification." (Vinciguerra Decl., Ex. 7, Docket entry no. 19-7.)

The letter read in pertinent part as follows:

It is our understanding, based upon our preliminary investigation and the limited information received to date, that [Mastercraft] entered into an agreement with Mega to perform certain work at the [Project Site]. Mastercraft's employee and your insured Joseph Giampa was allegedly injured on or about January 13, 2014 at the Project [Site].

To the extent that notice has not been provided to Mastercraft's respective carriers, please provide them with notice of the instant claim. Please be advised that it is Arch's position that if litigation is commenced Mastercraft and its respective carrier(s) are required to defend and indemnify Mega and as an additional insured in accordance with the terms

> and conditions of the agreement entered into by and between Mega and Mastercraft and Mastercraft's insurance policies.
>
> Kindly confirm receipt of notice of the instant claim and acceptance of the defense and indemnification of [Mega] should litigation be commenced.  We look forward to your reply.

(<u>Id.</u> at 2.)

Arch provided a second tender to Farm Family on February 6, 2014, "writing as a follow-up to [its] prior correspondence of in connection with [its] receipt and notice of the above-referenced claim."  (Vinciguerra Decl., Ex. 8, Docket entry no. 19-8.)

On June 12, 2015, Arch wrote to Farm Family yet again, as follows:

> The Complaint in the Giampa Suit alleges that the defendants owned, maintained, controlled, constructed the lands and/or the premises, operated, managed or acted as the general contractor at the site and project located at 616 East 139th Street, Bronx, New York.  That on or about January 13, 2014 Plaintiff was working at the project as an employee of [Mastercraft] and was 'lawfully traversing the interior stairway . . . [and was] caused to be injured and suffered permanent and severe personal injuries . . . ."  We understand that Mega and Mastercraft entered into an agreement that requires Mastercraft defend and indemnify each of the named defendants in the Giampa Suit: [Barrier Free Living] and [East 138th Street] as the owners of the property and Mega.  Additionally, that Mastercraft was required to obtain general liability insurance naming [Barrier Free Living], [East 138th Street] and Mega as additional insureds on a primary and non-contributing basis.
>
> **To the extent that notice has not been provided to Mastercraft's respective carriers, please provide them with notice of the instant claim.**
>
> Please be advised that Mastercraft, and its respective carrier(s), are required to defend and indemnify [Barrier Free Living], [East 138th Street] and Mega as additional insureds and contractual indemnitees in accordance with the terms and conditions of the Agreement entered into by Mastercraft in connection with the [Project Site].

(Vinciguerra Decl., Ex. 9, Docket entry no. 19-9.)

Arch sent this notice to Farm Family again on June 15, 2015.  (Vinciguerra Decl., Ex. 10, Docket entry no. 19-10.)  On August 4, 2015, Arch sent Farm Family a "Third and Final Request," warning that if it did "not receive a response to this correspondence in the next ten

(10) days [it would] be forced to file a Declaratory Judgment action against [Mastercraft] and [Farm Family]." (Vinciguerra Decl., Ex. 11, Docket entry no. 19-11.)

On September 17, 2015, counsel for the Tendering Parties wrote to Farm Family, observing that Mastercraft had "failed to file an appearance or serve an Answer [in the Third-Party Action] and [was] presently in default." Counsel stated that it was providing Farm Family with this information "in order to avoid unnecessary motion practice and entry of a default judgment against [Mastercraft]." (Vinciguerra Decl., Ex. 13, Docket entry no. 19-13.)

On October 22, 2015, Farm Family responded to the Tendering Parties' counsel by letter, acknowledging their request that it assume the defense and indemnification of the Tendering Parties. (Vinciguerra Decl., Ex. 14, Docket entry no. 19-14.) Farm Family stated that, "At this time, we are unable to grant [the Tendering Parties'] request, additional discovery is needed. It is premature for us to take over the defense and indemnity of [the Tendering Parties]. We will further review [the Tendering Parties'] request for defense and indemnification once additional discovery is completed." (Id.)

Arch has retained counsel and defended the Tendering Parties in the Underlying Action. (Vinciguerra Decl. ¶ 24.) Matthew Vinciguerra, Arch's Assistant Vice-President of Casualty Claims, proffers that, "To date, Arch has incurred attorneys' fees and related defense costs totaling $29,744.02 and continuing. If the [U]nderlying [A]ction is tried to verdict or a reasonable settlement is offered, Arch may also incur that indemnity obligation, up to the limits of its policy, in which case, Arch will seek reimbursement of that amount as well." (Id. ¶ 25.)

<u>DISCUSSION</u>

Summary judgment is appropriate where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law.  <u>See</u> Fed. R. Civ. P. 56(c); <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-50 (1986).  The moving party has the initial burden of demonstrating the absence of a disputed issue of material fact.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).  A dispute concerning material fact is genuine "if evidence is such that a reasonable jury could return a verdict for the nonmoving party."  <u>Aldrich v. Randolph Cent. Sch. Dist.</u>, 963 F.2d 520, 523 (2d Cir. 1992) (quoting <u>Anderson</u>, 477 U.S. at 248).  A genuine issue for trial exists if, based on the record as a whole, a reasonable jury could find in favor of the nonmovant.  <u>See</u> <u>Anderson</u>, 477 U.S. at 248.  In making its determination, the Court must resolve all ambiguities and draw all reasonable inferences in favor of the nonmovant.  <u>See id.</u> at 255.

To defeat summary judgment, it is not sufficient for the nonmoving party to present evidence that is conclusory or speculative, with no basis in fact.  <u>See</u> <u>Anderson</u>, 477 U.S. at 249-50.  Instead, the nonmoving party must go beyond the pleadings and "must do more than simply show that there is some metaphysical doubt as to the material facts."  <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986).  The nonmoving party must present "specific facts showing that there is a genuine issue for trial."  <u>Beard v. Banks</u>, 548 U.S. 521, 529 (2006).

<u>The Tendering Parties Are Additional Insureds on the Farm Family Policy</u>

The Farm Family Policy's terms are unambiguous; there is no genuine dispute of material fact that each of the Tendering Parties is an additional insured on the Farm Family Policy.  As discussed above, the Tendering Parties are clearly listed on the Additional Insured Schedule to the Farm Family Policy and are explicitly designated as additional insureds in the "Additional

Insured – Designated Person or Organization" and "Additional Insured[s] – Owners, Lessees or Contractors – Scheduled Person or Organization" endorsements.  (Vinciguerra Decl., Ex. 4 at 7-8, 16, 21, 22.)  Plaintiff is, therefore, entitled as a matter of law to a declaration that the Tendering Parties are additional insureds under the Farm Family Policy.

The Court now turns to the question of whether, under the terms of the Farm Family Policy, Farm Family must defend and indemnify the Tendering Parties with respect to the claims asserted in the Underlying Action.

Obligation to Defend and Indemnify the Tendering Parties

Defense Obligation

"An insurer's duty to defend claims made against its policyholder is ordinarily ascertained by comparing the allegations of a complaint with the wording of the insurance contract. . . . The duty is to defend any action, regardless of its merit, that seeks damages *potentially* within the indemnity coverage.  At the same time, an insurer's duty to defend is limited absolutely by the scope of the coverage purchased."  Int'l Bus. Machs. Corp. v. Liberty Mut. Ins. Co., 363 F.3d 137, 144 (2d Cir. 2004).  "If [a] complaint contains any facts or allegations which bring the claim even potentially within the protection purchased, the insurer is obligated to defend."  Regal Constr. Corp. v. Nat'l Union Fire Ins. Co., 930 N.E.2d 259, 261 (N.Y. 2010).  "This standard applies equally to additional insureds and named insureds."  Id. at 261-62.

"Under New York law, the initial interpretation of a contract is determined by the court as a matter of law.  In construing the provisions of a contract, including an insurance policy, unambiguous terms are given their plain and ordinary meaning."  Century Sur. Co. v. Franchise

Contractors, LLC, No. 14 Civ. 277, 2016 WL 1030134, at *4 (S.D.N.Y. Mar. 10, 2016) (internal quotation marks omitted).  "[T]he question of whether an insurance policy is ambiguous is a matter of law to be determined by the court."  Hugo Boss Fashions, Inc. v. Fed. Ins. Co., 252 F.3d 608, 616 (2d Cir. 2001).  "An ambiguity exists if the terms of an insurance contract suggest more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business."  Century Sur., 2016 WL 1030134, at *4 (internal quotation marks omitted).

The relevant Farm Family Policy endorsements provide for coverage of injuries "*caused, in whole or in part,* by [Mastercraft's] acts or omissions or the acts or omissions of those acting on [Mastercraft's] behalf in the performance of [its] ongoing operations."  (Id. at 16, 21, 22 (emphasis added).)  This provision is not ambiguous and, therefore, can be interpreted as a matter of law.  "The phrase 'caused by' does not materially differ from the . . . phrase, 'arising out of,'" a phrase that has definitively been construed under New York law.  See Nat'l Union Fire Ins. Co. v. Greenwich Ins. Co., 962 N.Y.S.2d 9 (1st Dep't 2013) (citing W&W Glass Sys., Inc. v. Admiral Ins. Co., 937 N.Y.S.2d 28 (1st Dep't 2012)).  Farm Family concedes that "[t]he simple issue before this Court on the motion is whether Plaintiff Arch has demonstrated that no legitimate question of fact exists that the alleged loss in the Underlying Action 'arose from' Mastercraft's work."  (See docket entry no. 25 at 13.)

"The New York Court of Appeals has held that the phrase 'arising out of' is ordinarily understood to mean originating from, incident to, or having connection with."  Fed. Ins. Co. v. Am. Home Assurance Co., 639 F.3d 557, 568 (2d Cir. 2011) (internal quotation marks omitted).  "The phrase requires only that there be *some* causal relationship between the injury and the risk

for which coverage is provided." Id. (internal quotation marks omitted).  Where "the term 'operations' is not [otherwise] defined in" the relevant insurance policy,  "'operations' is given its ordinary meaning, considering the general nature of the operation in the course of which the injury was sustained." Id. (internal quotation marks omitted).  "The ordinary meaning of the word in the context of this case is the 'doing or performing' of work." Id.

As to the duty to defend, the legal question is whether Giampa's complaint in the Underlying Action asserted a claim that was even potentially within the scope of the Farm Family coverage for the Tendering Parties as additional insureds.  There is no dispute that Giampa alleged in his complaint that he was an employee of Farm Family's principal insured, Mastercraft, and that he was injured on the Project Site.  (Vinciguerra Decl., Ex. 1 ¶¶ 70, 75.) These allegations clearly frame the potential for liability – Mastercraft's worker was injured on the job site where Mastercraft was conducting its masonry operations.  His accident was, therefore, potentially caused by those operations, in that his presence on the site was at least potentially the product of those operations.  The Farm Family Policy does not condition coverage on fault by Mastercraft or the employee.  Giampa's complaint is thus sufficient to trigger Farm Family's duty to defend the Tendering Parties under the Farm Family Policy.  See Regal Constr., 930 N.E.2d at 261.

Indemnification Obligation

"In contrast to the duty to defend, an insurer's duty to indemnify is narrower and triggered by a determination that the loss, as established by the fact, is covered by the policy." Century Sur., 2016 WL 1030134, at *4 (internal quotation marks omitted).  Thus, on this summary judgment motion practice, the indemnification question turns on whether there is any material factual dispute as to causation within the meaning of the Farm Family Policy.  Farm

Family does not dispute that Giampa was, in fact, employed on the job by Mastercraft.  Nor does it dispute that the injury occurred on an area within the job site.  Rather, Farm Family proffers evidence that the incident occurred "fifteen minutes before [Giampa's] shift began on January 13, 2014," (Gorton Decl., Ex A at 2)  and contends that Giampa's injury did not arise from Mastercraft's operations because "[n]o allegation is made that at the time [Giampa] was injured he was actually working on site or that the loss occurred in the course of his actual employment with Mastercraft."  (See docket entry no. 25 at 14-15.)  However, "the focus of the inquiry is not on the precise cause of the accident but the general nature of the operation in the course of which the injury was sustained."  See Regal Constr., 930 N.E.2d at 262.  In support of its contention that the timing of the accident and Giampa's active work status are material to the indemnity liability issue, Farm Family points to Worth Construction Co. v. Admiral Insurance Co., 888 N.E.2d 1043 (N.Y. 2008), in which the New York Court of Appeals rejected a coverage claim.  Farm Family's reliance on the Worth decision is misplaced, as it is factually distinguishable.

      The plaintiff in Worth was not employed by the defendant's insured, Pacific Steel, a subcontractor that had been hired to install a staircase at an apartment complex and obtained a commercial general liability insurance policy from Farm Family that named Worth Construction, the general contractor, as an additional insured.  See id. at 1044.  "After Pacific [Steel] installed the stairs, the project was turned over to Worth [Construction], who hired a concrete subcontractor to fill the pans.  Once the concrete had been poured and walls were erected around the stairs, Pacific [Steel] was to return to the site to complete its portion of the project by affixing the handrailings to the walls."  Id.  However, before Pacific Steel could do so, an employee of another subcontractor slipped and fell on fireproofing which had been installed by a different subcontractor.  Id.  The Court of Appeals held that Worth was not entitled to a declaration

requiring defense and indemnification by Farm Family in connection with the underlying personal injury action, finding that Pacific Steel was not operating on the job site at the time, and that "[t]he allegation in the complaint that the stairway was negligently constructed was the only basis for asserting any significant connection between Pacific [Steel's] work and the accident." Id. at 1046.  In the course of the litigation, "Worth admitted that its claims of negligence against Pacific [Steel] were without factual merit, [and thus effectively] conceded that the staircase was merely the situs of the accident."  Id.  Under these circumstances, the court held, "it could no longer be argued that there was any connection between [the employee's] accident and the risk for which coverage was intended."  Id.

Here, where Mastercraft was conducting operations on the Project Site and the concept of causation turns on the relationship of Mastercraft's employee to the worksite rather than on a claim that Mastercraft was negligent, Worth is inapposite.  The New York Court of Appeals' later decision in Regal Construction, which concerned coverage for a claim by the primary insured's own employee, is instructive here.  Finding the insurer responsible for defense and indemnification of the additional insured, the Regal Construction Court distinguished Worth and opined that:

> [T]here was a connection between the accident [involved therein] and Regal's work, as the injury was sustained by Regal's own employee while he supervised and gave instructions to a subcontractor regarding work to be performed.  That the underlying complaint alleges negligence on the part of [the construction manager] and not Regal is of no consequence, as [the construction manager's] potential liability for [the employee's] injury 'ar[ose] out of' Regal's operation, and thus, [the construction manager] is entitled to a defense and indemnification according to the terms of the CGL policy.

930 N.E.2d at 262-63; see also Wausau Underwriters Ins. Co. v. Old Republic Gen. Ins. Co., 122 F. Supp. 3d 44, 52 (S.D.N.Y. 2015) ("Applying Regal Construction, lower courts in New York have held that, where a person is acting on behalf of the named insured, 'it is not necessary to try

the issue of causation' prior to concluding that the relevant injury arose out of the named insured's ongoing operations."). Under New York law, "[w]here . . . the loss involves an employee of the named insured, who is injured while performing the named insured's work under the subcontract, there is a sufficient connection to trigger the additional insured 'arising out of' operations' endorsement and fault is immaterial to this determination." Hunter Roberts Constr. Grp., LLC v. Arch Ins. Co., 904 N.Y.S.2d 52 (1st Dep't 2010). "New York law establishes that the 'caused by' requirement is satisfied by the mere fact that the injured plaintiff in the Underlying Action worked for [the primary insured] at the time when the accident occurred." Zurich Am. Ins. Co. v. Harleysville Ins. Co., 194 F. Supp. 3d 253 (S.D.N.Y. 2016).[1] "In other words, if a subcontractor's employee injures himself on the job, that injury 'arises from' that employee's 'acts,' regardless of fault." Id. at 253.

"Courts construe the term 'ongoing operations' broadly." See Zurich Am. Ins. Co. v. Burlington Ins. Co., 2016 N.Y. Misc. LEXIS 1129, at *12 (Sup. Ct. N.Y. Cty. Apr. 4, 2016). "New York courts focus not on whether the injury occurs while actions are currently in progress, but rather whether it occurs before the work has been completed." Liberty Mut. Fire Ins. Co. v.

---

[1] The First Department's recent decision in Kel-Mar Designs, Inc. v. Harleysville Insurance Co., 8 N.Y.S.3d 304, 305 (1st Dep't 2015), is to the same effect:

> The insurance policy that defendant provided to [the S]ubcontractor . . . provides additional insured coverage to plaintiff general contractor only for liability caused, in whole or in part, by the acts or omissions of [the Subcontractor] . . . in the performance of [Subcontractor's] ongoing operations for the additional insured. The loss at issue in the underlying action – a personal injury suffered by a [Subcontractor] employee when he lost his footing on a stairway while working on a construction project – resulted, at least in part, from 'the acts or omissions' of the [Subcontractor] employee while performing his work (i.e. his loss of footing while on the stairway), regardless of whether the [Subcontractor's] employee was negligent or otherwise at fault for his mishap. Accordingly, defendant is obligated both to defend and indemnify plaintiff as an additional insured under the [Subcontractor] policy.

E.E. Cruz & Co., Inc., 475 F. Supp. 2d 400, 411 (S.D.N.Y. 2007); see also Cevasco v. Nat'l R.R. Passenger Corp., 606 F. Supp. 2d 401, 412-13 (S.D.N.Y. 2009); O'Connor v. Serge Elevator Co., 444 N.E.2d 982, 983 (N.Y. 1982) ("The contract could not be performed, of course, unless A&M's employees could reach and leave their workplaces on the job site.  The instant injuries, occurring during such a movement, must be deemed as a matter of law to have arisen out of the work."); Zurich Am. Ins. Co., 2016 N.Y. Misc. LEXIS 1129, at *16 ("Thus, because Capellino was injured, while on the jobsite, even if Capellino was walking to get a coffee or to go to the bathroom at the time of his injury, CCA is still entitled to a defense in the [underlying] action.").

Farm Family's argument that Giampa had not yet officially begun his work day at the time of his injury – and that he was, therefore, not injured during the actual course of his employment – fails to frame a genuine issue of material fact.  There is no dispute that Giampa's injury resulted from his work at the Project Site during the course of his employment with Mastercraft – even construing the facts in the light most favorable to Farm Family, it is clear that employees such as Giampa had to enter and leave the site in connection with their shifts.  The 15-minute differential between his scheduled reporting time and the time of the accident is insufficient to support any rational inference that his presence on the site at the time of the accident was not the result of his employment as a worker in Mastercraft's operations.  Indeed, Farm Family's own proffer of an "Employer's Report of Work-Related Injury/Illness" form documenting the incident underscores the irrefutable connection between the employment and the accident.  Giampa's  injuries thus "arose out of" and were "caused, in whole or in part, by [Mastercraft's] acts or omissions or the acts or omissions of those acting on [Mastercraft's] behalf in the performance of [its] ongoing operations" as a matter of law, and Farm Family is obligated to indemnify the Tendering Parties under the additional insured endorsements.

Reimbursement of Defense Costs

As Farm Family is obligated to defend and indemnify the Tendering Parties, Arch is likewise entitled to recoup the defense costs it has incurred in defending the Tendering Parties in the Underlying Action. Arch seeks "the entry of a money judgment in [its] favor against Farm Family for $29,744.02." (See Vinciguerra Decl. at 12.)

"[I]n the event of a breach of the insurer's duty to defend, the insured's damages are the expenses reasonably incurred by it in defending the action after the carrier's refusal to do so." Nat'l Union Fire Ins. Co., 962 N.Y.S.2d at 9. Farm Family failed to respond to Arch's numerous tenders beginning on January 24, 2014. To date, Farm Family has refused to defend the Tendering Parties in the Underlying Action and must therefore reimburse Arch for the defense costs (including reasonable attorneys' fees and costs) it has incurred providing that defense. See Zurich Am. Ins. Co., 2016 N.Y. Misc. LEXIS 1129, at *17.

Vinciguerra attests that, "Arch retained the law firm of O'Connor Redd LLP to defend the Tendering Parties in the underlying action. To date, Arch has incurred attorneys' fees and related defense costs totaling $29,744.02 and continuing." (Vinciguerra Decl. ¶ 25.)

However, beyond this affidavit, Arch has provided no documentary evidence of the defense costs it has actually incurred. Thus, having concluded that Arch is entitled to reimbursement from Farm Family, the Court hereby refers this case to Magistrate Judge Gorenstein for a damages inquest to determine the monetary award to which Arch is entitled.

Arch's Stay Application

When Arch filed its summary judgment motion, it also moved for an order, pursuant to Fed. R. Civ. P. 26, staying all discovery and relevant deadlines set forth in this Court's March

11, 2016, Pre-Trial Scheduling Order (the "Pre-Trial Scheduling Order") pending adjudication of that motion.  Farm Family did not oppose the application for a stay, and neither general discovery nor the scheduled final pretrial conference is required in light of the Court's determination as to liability for defense and indemnification.  The stay application is, therefore, denied as moot.  The final pretrial conference will be canceled, and communications regarding further proceedings, including any application for discovery in connection with the damages inquest, should be directed to Magistrate Judge Gorenstein.

CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment is granted. The Court declares that Mega, East 138th Street, and Barrier Free Living are additional insureds under the subject Farm Family Policy, that Farm Family is obligated to defend and indemnify those additional insureds with respect to the action captioned <u>Giampa v. Barrier Free Living Housing Dev. Fund Corp., et al.</u>, and that Arch is entitled to reimbursement of the defense costs it has incurred to date, in an amount to be determined through an inquest. Plaintiff's motion to stay proceedings is denied as moot, and the April 20, 2017, final pretrial conference is cancelled. The parties are directed to contact the chambers of Magistrate Judge Gorenstein to make arrangements for inquest proceedings.

This Memorandum Opinion and Order resolves docket entry no. 17.

SO ORDERED.

Dated: New York, New York
March 3, 2017

          /s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
United States District Judge